S. LANE TUCKER
United States Attorney

JACK S. SCHMIDT
Assistant United States Attorney
Federal Building & U.S. Courthouse
709 West 9th Street, Room 937
Post Office Box 21627
Juneau, Alaska 99802
Phone: (907) 796-0400
Fax: (907) 796-0409
Email: jack.schmidt@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SIMEON PHILLIP CABANSAG,<br><br>Defendant. | Case No. 1:24-cr-000002-TMB-MMS |

**PLEA AGREEMENT**

**Unless the parties jointly inform the Court in writing of any additional agreements, this document in its entirety contains the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.**

## I. SUMMARY OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11

### A. Summary of Agreement

The defendant agrees to plead guilty to the following count(s) of the Indictment in this case: Count 1 – Conspiracy, in violation of 18 U.S.C. § 371 and Count 2 -- Misrepresentation of Indian Produced Goods and Products, in violation of 18 U.S.C. § 1159(a) and (b)(1)(A)(i) and Count 17 – Wire Fraud, in violation of 18 U.S.C. § 1343. The parties stipulate and agree to the amount of loss of approximately $34,681.19 to be used for the purpose of determining the underlying guideline calculation pursuant to U.S.S.G. § 2B1.1 (b)(1)(C). The United States will agree to recommend a sentence of time served and the defendant will remain in custody pending sentencing. The government agrees to not recommend that the defendant to pay a fine. The parties agree that joint and several restitution is to be paid to customers defrauded by CABANSAG, to be determined at sentencing. The defendant agrees that the defendant is to write and sign a letter of apology, approved by the United States Attorney's Office to be provided to victims in this case. The Court is free to impose any other conditions of probation as it sees fit for the defendant The United States agrees not to prosecute the defendant further for any other offense related to the event(s) that resulted in the charge(s) contained in the Indictment.

The defendant will waive all rights to appeal the conviction(s) and sentence imposed under this agreement. The defendant will also waive all rights to collaterally

attack the conviction(s) and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea(s).

**B. Federal Rule of Criminal Procedure 11**

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A), (B) will control this plea agreement. Thus, the defendant or the government may not withdraw from this agreement or the guilty plea(s) if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

## II. CHARGES, ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE

**A. Charges**

**1. The defendant agrees to plead guilty to the following count(s) of the Indictment:**

Count 1: Conspiracy, in violation of 18 U.S.C. § 371;

Count 2: Misrepresentation of Indian Produced Goods and Products, a violation of 18 U.S.C. § 1159(a) and (b)(1)(A)(i);

Count 17: Wire Fraud, in violation of 18 U.S.C. § 1343.

**B. Elements**

The elements of the charge(s) in Count 1 to which the defendant is pleading guilty are as follows:

**1.** The defendant, beginning on or about May 2016 and ending on December 8, 2021, there was an agreement between two or more persons to commit at least one crime charged in the indictment; and

2. The defendant became a member of the conspiracy knowing at least one of its objects and intending to help accomplish it; and

3. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

The elements of the charge(s) in Count 2 to which the defendant is pleading guilty are as follows:

1. The defendant offered or displayed for sale or sold any good;

2. In a manner that falsely suggested the good was Indian produced, an Indian product of a particular Indian, Indian Tribe, or Indian arts and crafts acts organization;

3. The defendant committed those acts knowingly; and

4. The goods offered, displayed, or sold, were offered, displayed, or sold for a price of $1,000 or more.

The elements of the charge(s) in Count 17 to which the defendant is pleading guilty are as follows:

1. The defendant did knowingly and intentionally participate in or devise a scheme or plan to defraud for obtaining money or property by materially false or fraudulently pretenses representations or promises;

2. The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3. The defendant acted with the intent to defraud, that is the intent to deceive or cheat; and

4. The defendant used or caused to be used, an interstate wire communication to carry out or attempt to carry out and essential part of the scheme.

In determining whether a scheme to defraud exists, you may consider not only the defendant's words and statements, but also the circumstances in which they are used as a whole.

A wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use.

It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature. Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate wire communication must have actually occurred in furtherance of the scheme.

**C. Factual Basis**

The defendant admits the truth of the allegations in Counts 1,2, and 17 of the Indictment and the truth of the following statement, and the parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty plea(s) and for the imposition of the sentence:

Beginning in or about May 2019, and continuing through on or about August 29, 2021, in the District of Alaska, in or near Ketchikan, the defendant SIMEON PHILLIP

CABANSAG, did conspire with CAMERON THOMAS LAWRENCE and other co-conspirators, known and unknown, who knew at least one of its objects and intending to help accomplish it. CABANSAG and others did engaged in a scheme or plan to knowingly display, offer for sale, and sell for $1,000 or more, stone carvings, manufactured in the Philippines, in a manner, in which CABANSAG and others made material false statements to customers by suggested the stone carvings were authentic artwork produced by Alaska Natives, when in fact they were not Alaska Native produced, product, or a product of an Alaska Native Indian or Tribe, with the intent to defraud, deceive, or cheat customers of their money. CABANSAG, LAWRENCE and others known and unknown either used or caused to be used an interstate wire communications, that is, the processing of credit card transactions to carry out the fraudulent scheme.

CABANSAG lived in Alaska and was employed at Alaska Stone Arts in Ketchikan, Alaska, which sold a wide range of stone carvings and wood totem poles, respectively. The defendant and other employees in the store knew products sold in the above identified store were not made by Alaska Native artists, but were produced in the Philippines with Filipino labor, and the items sold were crafted based upon traditional Alaska Native designs or styles but were not made by Alaska Natives or members of any American Indian tribe. The fraudulent scheme utilized in the business in Alaska utilized Alaska Native and non-Alaska Native employees, which materially falsely represented the employees were part of an Alaska Native family business and those employees were Alaska Natives who produced the Philippine stone carvings and wood totem poles sold in the business knowing that the products were made in the Philippines with Filipino labor.

During the course of CABANSAG's employment, CABANSAG, an Alaska Native and enrolled Central Council of the Tlingit and Haida Indian Tribes of Alaska member, carried out a material fraudulent scheme with LAWRENCE and other co-conspirators, utilizing false or fraudulent pretenses, in which, held CABANSAG held himself out as a stone carver "Simeon" or "SC" for Alaska Stone Arts to customers of the store, as did LAWRENCE and others co-conspirators, and also held out other Alaska Native or non-native employees as Alaska Native artisans of stone carvings, when, in fact they were not. CABANSAG knew that all the stone carvings he claimed to be the carver and the stone carvings displayed and sold in the store were made not made by Alaska Native artisans.

On or about May 28, 2019, at Alaska Stone Arts, CABANSAG, an Alaska Native, with J.H.R., a Filipino, introduces CABANSAG as one of the Alaska Native artists of the stone carvings. CABANSAG sold and misrepresented to customers he carved a Philippine produced bear with a fish in its mouth stone carving for $1,435.00. CABANSAG signed the stone carving "SC", which identifies CABANSAG as the artisan. CABANSAG falsely and materially misrepresented that he found the stone, designed and carved his own carvings, and sold the stone carvings as part of his family tradition in order to sell the carving to the customer by deceiving the customer that they were purchasing an authentic Alaska Native carving. CABANSAG used or caused to be used an interstate wire communication, to run the customers credit card information for the cost of the fraudulent sale to the customer. CABANSAG received a 20% sales commission on this sale.

On or about July 14, 2019, at Alaska Stone Arts, CABANSAG, an Alaska Native, with an unnamed employee present, sold and misrepresented to a customer two Philippine produced stone carvings for $1,600.00. CABANSAG represented Alaska Native artists made the stone carvings. CABANSAG represented a dolphin carving signed by "jr" and a second dolphin carving signed by "Kilit", which identifies C.M. Rodrigo, a Filipino, as the artisan. CABANSAG stated his Alaska Native family operated the business, produced the stone carvings, and "Kilit" is an uncle. CABANSAG used or caused to be used an interstate wire communication, to run the customers credit card information for the cost of the fraudulent sale to the customer. CABANSAG received a 17% sales commission on this sale.

On or about July 22, 2019, at Alaska Stone Arts, CABANSAG, an Alaska Native, with J.H.R., a Filipino, sold and misrepresented to customers that he carved a Philippine produced eagle stone carving for $6,435.00. CABANSAG signed the stone carving "Simeon", which identifies CABANSAG as the artisan. CABANSAG stated the stone is mined on his family property, they carve the stone, and sold the carvings as part of his family tradition. CABANSAG used or caused to be used an interstate wire communication, to run the customers credit card information for the cost of the fraudulent sale to the customer. CABANSAG received a 17% sales commission on this sale.

On or about August 8, 2019, at Alaska Stone Arts, CABANSAG, an Alaska Native, with C.R. Rodrigo, a Filipino, offered to sell and misrepresented to an undercover law enforcement agent a Philippine produced two bears stone carving signed by "Kilit" for $7,000.00. CABANSAG represented his Tlingit family of stone carvers made the

carvings. CABANSAG represented "Kilit", which identifies C.M. Rodrigo, a Filipino, as the artisan. CABANSAG is a Tlingit stone carver and in the Raven clan. C.R. Rodrigo represented "Kilit" is his dad and grew up with CABANSAG in the same Raven clan. CABANSAG stated "Kilit" is his uncle who taught his brothers and cousins to carve stone and do commission work.

On or about September 16, 2019, at Alaska Stone Arts, CABANSAG, an Alaska Native, with an unnamed employee present, sold and misrepresented to customers a Philippine produced bear stone carving for $1,935.00. CABANSAG introduces C.M. Rodrigo, a Filipino, as the Alaska Native master carver of the stone carvings and all the stone carvers were from the same Alaska Native family. CABANSAG used an interstate wire communication, to run the customers credit card information for the cost of the fraudulent sale to the customer. CABANSAG received a 17% sales commission on this sale.

On or about September 22, 2019, at Rail Creek, J.H.R., a Filipino, sold and misrepresented to customers a Philippine produced sea turtle with a fish in its mouth stone carving for $2,100.00 and a bear with a fish in its mouth stone carving for $2,435.00 and the bear is signed by "Kilit", which identifies C.M. Rodrigo, a Filipino, as the artisan. J.H.R. introduced the same customers to CABANSAG, an Alaska Native, as his brother and Alaska Stone Arts owner. CABANSAG then sold and misrepresented to the customers a Philippine produced bear with a salmon in its mouth carving for $9,935.00. J.H.R. and CABANSAG later confirmed Alaska Native artists made the stone carvings and "Kilit" is their Tlingit uncle. CABANSAG used an interstate wire

communication, to run the customers credit card information for the cost of the fraudulent sale to the customer. CABANSAG received a 10% sales commission for each of these sales.

On or about August 26, 2021, at Alaska Stone Arts, CABANSAG, an Alaska Native, with LAWRENCE., of American Indian descent, sold and misrepresented to customers three Philippine produced stone carvings each signed by "Kilit" for $4,435.00. CABANSAG and LAWRENCE. represented "Kilit", which identifies C.M. Rodrigo, a Filipino, as the artisan. CABANSAG and C.T.L. described "Kilit" as a "genuine Alaskan artist" and their Alaska Native uncle. CABANSAG used an interstate wire communication, to run the customers credit card information for the cost of the fraudulent sale to the customer. CABANSAG received a 10% sales commission on this sale.

On or about August 27, 2021, at Alaska Stone Arts, CABANSAG, an Alaska Native, with LAREWNCE present, of American Indian descent, sold and misrepresented to a customer a Philippine produced bear with an eagle on its back stone carving signed by "Kilit" for $1,371.19. CABANSAG and C.T.L. represented "Kilit", which identifies C.M. Rodrigo, a Filipino, as the artisan. CABANSAG represented his Alaska Native family made the stone carvings and his father is the carver "Kilit". CABANSAG used or caused to be used an interstate wire communication, to run the customers credit card information for the cost of the fraudulent sale to the customer. CABANSAG and LAWRENCE received a 10% sales commission on this sale.

On or about August 29, 2021, at Alaska Stone Arts, T.L.M., an Alaska Native, and CABANSAG, an Alaska Native, introduces CABANSAG as one of the Alaska Native

artists of the stone carvings. CABANSAG, with T.L.M. present, sold and misrepresented to the customers that he carved a Philippine produced humpback whale stone carving for $3,000.00. CABANSAG signed the stone carving "Simeon", which identifies CABANSAG as the artisan. CABANSAG also represented he carved a bear stone carving and signed the stone carving "Simeon" for the customers in the store. CABANSAG used or caused to be used an interstate wire communication, to run the customers credit card information for the cost of the fraudulent sale to the customer. CABANSAG received a 10% sales commission on this sale.

## D. Statistory Penalties and Other Matters Affecting Sentence

### 1. Statutory Penalties

The maximum statutory penalties applicable to the charges to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty plea(s), are as follows:

Count 1: 18 U.S.C. § 371 (Conspiracy)

1) 5 years' imprisonment;

2) a fine of $250,000;

3) a $100 special assessment; and

4) three years of supervised release.

Count 2: 18 U.S.C. § 1159(a) and (b)(1)(A)(i) (Misrepresentation of Indian Produced Goods and Products)

1) 5 years' imprisonment;

2) a fine of $250,000 or twice the pecuniary gain to the defendant or pecuniary loss to the victim;

3) a $100 special assessment; and

4) three years of supervised release.

Count 17: 18 U.S.C. § 1343 (Wire Fraud)

1) 20 years' imprisonment;

2) a fine of $1,000,000;

3) a $100 special assessment; and

4) three years of supervised release.

**2. Other Matters Affecting Sentence**

**a. Conditions Affecting the Defendant's Sentence**

The following conditions may also apply and affect the defendant's sentence: 1) pursuant to Comment 7 of United States Sentencing Guidelines (U.S.S.G). § 5E1.2, the Court may impose an additional fine to pay the costs to the government of any imprisonment and supervised release term; 2) pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date; 3) upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release; 4) the Court may order the defendant to pay restitution pursuant to the 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1, and if 18 U.S.C. § 3663A (mandatory

restitution for certain crimes) applies, the Court shall order the defendant to pay restitution.

**b. Payment of Special Assessment**

The defendant agrees to pay the entire special assessment in this case on the day the Court imposes the sentence. All payments will be by check or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

**c. Consequences of Felony Conviction**

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury. If applicable, any defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense, be denied citizenship, and not permitted to return to the United States unless the defendant specifically receives the prior approval of the United States Attorney General. In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including but not limited to possible denaturalization.

**E. Restitution**

The defendant agrees that the Court will order restitution in an amount to be determined at sentencing.

### F. Forfeiture

There are no items identified for forfeiture.

## III. ADVISORY UNITED STATES SENTENCING GUIDELINES, GUIDELINE APPLICATION AGREEMENTS, SENTENCING RECOMMENDATIONS

### A. Advisory United States Sentencing Guidelines

The Court must consult the advisory United States Sentencing Guidelines (U.S.S.G). as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The U.S.S.G. do not establish the statutory maximum or minimum sentence applicable to the offense(s) to which the defendant is pleading guilty. The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence recommended by the U.S.S.G.

### B. Guideline Application Agreements

The parties have no agreements on any guideline applications unless set forth below in this section.

#### 1. Acceptance of Responsibility

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two-level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance

of responsibility, the United States will not make or, if already made, will withdraw this recommendation and motion.

### C. Sentencing Recommendations

The United States Probation Office (U.S.P.O) will prepare the defendant's pre-sentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the guideline sentence range calculation the U.S.P.O. recommends, as well as present evidence in support of their respective sentencing arguments.

The parties stipulate and agree to the amount of loss of approximately $34,681.19 to be used for the purpose of determining the underlying guideline calculation pursuant to U.S.S.G. § 2B1.1 (b)(1)(C) calling for a +4 level increase from the base level of 6, for a total offense level of 10. The parties stipulate and agree that the government will recommend a sentence of time served and the parties agree that the defendant will remain in custody pending sentencing. The parties agree to recommend that the defendant is to not to pay a fine. The parties agree to joint and several restitution to be paid to customers defrauded by CABANSAG to be determined at sentencing. The parties further stipulate and agree that the defendant is to write and sign a letter of apology, approved by the United States Attorney's Office to be provided to victims in this case. The parties are free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on the stipulated facts set forth in Section II.C, any additional

facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory U.S.S.G., and the sentencing factors set forth in 18 U.S.C. § 3553.

## IV. ADDITIONAL AGREEMENTS BY UNITED STATES

In exchange for the defendant's guilty plea(s) and the Court's acceptance of the defendant's plea(s) and the terms of this agreement, the United States agrees that it will not prosecute the defendant further for any other offense – now known – arising out of the subject of the investigation related to the charges brought in the Information in this case and the defendant's admissions set forth in Section II.C.

Provided, however, if the defendant's guilty plea(s) or sentence is/are rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated as well as for perjury and false statements. The defendant hereby agrees that he/she waives any defense that the statute of limitations bars the prosecution of such a reinstated charge.

## V. WAIVER OF TRIAL RIGHTS, APPELLATE RIGHTS, COLLATERAL ATTACK RIGHTS, CLAIM FOR ATTORNEY FEES AND COSTS, AND RULE 410

### A. Trial Rights

Being aware of the following, the defendant waives these trial rights:

- If pleading to an Information, the right to have the charges presented to the grand jury prior to entering the guilty plea;

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;
- The right to object to the composition of the grand or trial jury;
- The right to plead not guilty or to persist in that plea if it has already been made;
- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;
- The right to be represented by counsel at trial and if necessary to have a counsel appointed at public expense to represent the defendant at trial – the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;
- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;
- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and
- The right to contest the validity of any searches conducted on the defendant's property or person.

**B. Appellate Rights**

The defendant waives the right to appeal the conviction(s) resulting from the entry of guilty plea(s) to the charges set forth in this agreement. The defendant further agrees that if the Court imposes a sentence that does not exceed the statutory maximum penalties – as set forth in Section II.D above in this agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes. The defendant understands that this waiver includes, but is not limited to, forfeiture (if applicable), terms or conditions of probation (if applicable) or supervised release, any fines or restitution, and any and all constitutional (or legal) challenges to defendant's conviction(s) and guilty plea[s], including arguments that the statute(s) to which defendant is pleading guilty (is/are) unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea[s] of guilty.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement. The government is free to reinstate any dismissed charges, and withdraw any motions for downward departures, or sentences below the mandatory minimum made pursuant to 18 U.S.C. § 3553(e).

**C. Collateral Attack Rights**

The defendant agrees to waive all rights to collaterally attack the resulting conviction(s) and/or sentence – including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution – the Court imposes. The only exceptions to this collateral attack waiver are as follows: 1) any

challenge to the conviction or sentence alleging ineffective assistance of counsel – based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty plea(s).

**D. Claim for Attorney Fees and Costs**

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney fees and costs from the other party.

**E. Evidence Rule 410 and Fed. R. Crim. P. 11(f)**

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement set forth in Section II.C. The defendant agrees that the statements made by him in signing this agreement shall be deemed usable and admissible against the defendant as stipulations in any hearing, trial or sentencing that may follow. The foregoing provision acts as a modification, and express waiver, of Federal Rule of Evidence 410 and Fed. R. Crim. P. 11(f), and is effective upon the defendant's in-court admission to the factual basis supporting the plea(s). This provision applies regardless of whether the court accepts this plea agreement.

**F. Potential Plea before Magistrate Judge**

The defendant has the right to enter a plea before a United States District Court Judge. The defendant, defense counsel, and the attorney for the Government consent to have the defendant's plea(s) taken by a United States Magistrate Judge pursuant to Fed. R. Cr. P. 11 and 59. The parties understand that if the Magistrate Judge recommends that the plea(s) of guilty be accepted, a pre-sentence investigation report will be ordered

pursuant to Fed. R. Crim. P. 32. The parties agree to file objections to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide whether to accept this plea agreement at the time it imposes sentence in the case. The defendant agrees that if the defendant is pleading guilty to an offense described in 18 U.S.C. §. 3142(f)(1)(A), (B), or (C) (involving a crime of violence, a crime punishable by a maximum sentence of life or death, or a Title 21 controlled substance offense for which the maximum sentence is ten years or more), that the defendant will remand into custody on the day that he/she agrees in court to the factual basis supporting the plea. The defendant further agrees not to seek release at any time between the date of the guilty plea before the Magistrate Judge and the date of imposition of sentence before the District Court Judge.

## VI. THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF THIS PLEA AGREEMENT

I, SIMEON PHILLIP CABANSAG, the defendant, affirm this document contains all of the agreements made between me – with the assistance of my attorney – and the United States regarding my plea(s). There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty plea(s).

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter my plea.

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill these obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offense(s) to which I am pleading guilty and my understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter my plea(s). I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be

revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea(s). My attorney and I have discussed all possible defenses to the charge(s) to which I am pleading guilty. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statute(s) applicable to my offense and sentence as well as the possible effect the U.S.S.G. may have on my sentence.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of Count 1 – Conspiracy, in violation of 18 U.S.C. § 371 and Count 2 -- Misrepresentation of Indian Produced Goods and Products, in violation of 18 U.S.C. § 1159(a) and (b)(1)(A)(i) and Count 17 – Wire Fraud, in violation of 18 U.S.C. § 1343.

DATED: 8-20-24

SIMEON PHILLIP CABANSAG
Defendant

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charge(s) to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to

enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: 8-20-2024

NICHOLAS POLASKY
Attorney for CABANSAG

On behalf of the United States, the following accepts the defendant's offer to plead guilty under the terms of this plea agreement.

S. LANE TUCKER
United States Attorney

DATED: 8/20/2024

JACK S. SCHMIDT
Assistant United States Attorney